```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF ILLINOIS
                        EASTERN DIVISION

                                    )
  Ocsears Kinslow,                  )
                                    )
                                    )
          Plaintiff,                )
                                    )
                                    ) No. 14 C 6005
      v.                            )
                                    )
                                    )
  Chicago Police Officers           )
  J. Duckins, Star #10325,          )
  T.B. Meeks, Star #8051,           )
  and the City of Chicago,          )
                                    )
          Defendants.               )
```

**MEMORANDUM OPINION AND ORDER**

Ocsears Kinslow ("Kinslow") has sued Chicago Police Officers Jessica Duckins ("Duckins") and Tiffany Meeks ("Meeks"), asserting claims under 42 U.S.C. § 1983 for "false detainment and seizure" (Count I)[1] and false arrest (Count II). Kinslow also brings a claim against Duckins and Meeks (Duckins and Meeks together, "the officers") for malicious prosecution under Illinois law, and a claim against the City of Chicago ("the City") for indemnification (Count IV) (the officers and the City together, "defendants"). Before me are the parties' cross-motions for partial summary

---

[1] Kinslow's "False Detainment and Seizure" claim alleges that Duckins and Meeks violated his Fourth Amendment rights by "falsely stopping and seizing [him] and his vehicle ... without a reasonable, articulable suspicion and probable cause." Compl. ¶ 26.

judgment on Kinslow's claims for false arrest and malicious prosecution. For the reasons below, the defendants' motion is granted and Kinslow's motion is denied.

I.

On September 1, 2012, Officer Duckins and Officer Meeks were on patrol in an unmarked car with a third Officer, Milton Kinnison.[2] At about 1:00 a.m., the officers pulled Kinslow over in his SUV. The facts surrounding the initial stop of Kinslow's vehicle are contested. Duckins claims that she pulled Kinslow over because she saw him operating a mobile device while driving and because his vehicle's license plate light was broken. Duckins further says that after she asked Kinslow for his license and proof of insurance, she observed him reaching towards the console area between the vehicle's front seats. According to Duckins, Kinslow's reaching continued even after she asked him to keep his hands where she could see them. Kinslow denies that he was operating a mobile device while driving or that his license plate light was broken. He also denies reaching toward the console while speaking to Duckins.

Duckins directed Kinslow to exit the vehicle and he was handcuffed while his vehicle was searched. It is undisputed that

---

[2] Kinnison appears to have had no recollection of the events in question. His role in the incident was essentially limited to inventorying the items recovered from the search of Kinslow's vehicle. The extent of Meeks's recollection and involvement is less clear. Insofar as Kinslow's arrest is concerned, however, her role was clearly secondary to Duckins's.

2

three prescription cough medication bottles were recovered during the search. Duckins claims that the bottles were in plain view in the SUV's console area. Kinslow denies that the bottles were in plain view and claims that he was unaware of their presence in his vehicle until the police found them. According to Kinslow, the medications belonged to his uncle, whom he had just given a ride home. Kinslow further argues that the medication bottles could not have been in plain view because his uncle carried them in a bag.

The facts relating to the condition of the bottles are largely undisputed. The first bottle was not sealed and was partially filled with liquid. Its label indicated that it was prescribed to "McKinley Holmes" ("Holmes") and that it contained "Promethazine DM syrup" ("PDM"). The second bottle also contained liquid. Its label indicated that it had been filled by a different pharmacy and that it contained "Promethazine/Dextrom." The name and address on the label had been scratched out with a marker. However, the label remained legible enough to see that it had been prescribed to McKinley Holmes. The third bottle was empty and its label had been partially torn off. However, enough of the label remained intact to ascertain that the patient's address was different from the one listed on the two other bottles (and from Kinslow's own address). The label on the third bottle indicated that it contained "Promethazine DM Syrup."

Kinslow told the officers that McKinley Holmes was his uncle. He explained that he had just dropped Holmes off after taking him to a family reunion and suggested that Holmes must have inadvertently left the medications behind. Duckins believed -- correctly -- that the "DM" or "Dextrom" on the bottle labels referred to dextromethorphan (DM). She also believed -- incorrectly -- that "methorphan"[3] was another name for codeine. Both codeine and dextromethorphan are classified as Schedule II narcotics under Illinois' Controlled Substances Act. *See* 720 ILCS 570/206(b)(1)(vii) & (xviii). Both Duckins and Meeks had previously arrested individuals for using prescription cough medicine to make a street drug known as "lean," a combination of promethazine, codeine, Jolly Ranchers candy, and soda mixed inside a soda bottle. In addition, Duckins was aware that codeine cough syrup was sometimes consumed on its own and was sold on the street by the capful.

The officers arrested Kinslow for being in possession of a controlled substance in violation of the Illinois Controlled Substances Act ("the Act"). *See* 720 ILCS 570/402.[4] Kinslow was

---

[3] Methorphan comes in two forms: dextromethorphan, which is used as a cough suppressant, and levomethorphan, which is an opioid analgesic that was never clinically developed. *See* https://en.wikipedia.org/wiki/Methorphan.

[4] Violation of 720 ILCS 570/402 is a Class 4 felony, carrying a possible prison sentence of between one and three years, *see* 730

taken to the police station and was later released after paying a $3,000 bond. In addition to the possession charge, Kinslow was issued two traffic tickets. The contents of the bottles were later sent to the Illinois State Police Crime Lab for testing. The results confirmed that they contained methorphan.

On December 20, 2013, a bench trial was held in Kinslow's case. Duckins and Kinslow testified essentially to their respective accounts of the facts as described above. Additional witnesses called by Kinslow largely corroborated his story. Specifically, Kinslow's witnesses testified that, along with Holmes, he had given them a ride to the family reunion; that Holmes had brought his medications to the gathering; and that Holmes had carried the medications in a bag. One witness also testified that it was Holmes's practice to scratch the labels off of his prescription medication bottles.[5] At the conclusion of the proceedings, the judge found Kinslow not guilty, stating that the evidence that Kinslow knowingly possessed the medications was "sorely lacking." The traffic citations were also dismissed.

II.

**A. Summary Judgment & the Parties' Factual Disputes**

---

ILCS 5/5-4.5-45, and a fine of up to $25,000, *see* 730 ILCS 5/5-4.5-50(b).
[5] Mr. Holmes passed away about three weeks after Kinslow was arrested. Before his death, he signed a declaration stating that the medications belonged to him.

5

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

As previously noted, the facts concerning the stop and search of Kinslow's vehicle are disputed. In his response to the defendants' summary judgment motion, Kinslow asserts that these factual disputes automatically preclude summary judgment in the defendants' favor. This contention is too hasty. The existence of a factual dispute bars summary judgment only where the disputed facts are material. *See, e.g.*, *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012)("Not all disputes of fact preclude summary judgment. Such factual disputes must be both material *and* genuine."). While the factual disputes recounted above are material to Kinslow's claim for "false detention and seizure," he does not explain why the disputes are material to his false arrest and malicious prosecution claims. The latter claims turn largely on the question of whether the officers had probable cause for Kinslow's arrest, and the facts on which the probable cause determination was based -- the condition of the bottles found in Kinslow's SUV -- are undisputed.

To be sure, in the context of a criminal prosecution, the exclusionary rule may invalidate an arrest based on evidence obtained from an illegal stop or search. But courts have repeatedly held that such evidence may be used to establish probable cause in the context of § 1983 and other civil claims. *See, e.g.*, *Williams v. Carroll*, No. 08 C 4169, 2010 WL 5463362, at *4 (N.D. Ill. Dec. 29, 2010) ("In [§ 1983] actions, the lack of probable cause to stop and search does not vitiate the probable cause to arrest, because (among other things) the fruit of the poisonous tree doctrine is not available to assist a § 1983 claimant.") (brackets and quotations marks omitted); *Cannon v. Christopher*, No. 1:06-CV-267, 2007 WL 2609893, at *4 (N.D. Ind. Sept. 6, 2007) ("[T]he weight of authority found by the Court holds that the 'fruit of the poison tree' doctrine, which requires the exclusion of evidence found as a result of a violation of the Fourth Amendment in a criminal trial, does not apply in a § 1983 action.") (quotation marks omitted).[6] In short, even assuming that the search of Kinslow's vehicle violated the Fourth Amendment, it would not necessarily follow that probable

---

[6] Although the Seventh Circuit has yet to address whether probable cause for purposes of false arrest and other civil claims can be based on evidence obtained from a purportedly illegal search, other Circuits have answered the question affirmatively, *see, e.g.*, *Lingo v. City of Salem*, --- F.3d ---- (9th Cir. June 27, 2016), *Black v. Wigington*, 811 F.3d 1259, 1268 (11th Cir. 2016); *Townes v. City of New York*, 176 F.3d 138, 145 (2d Cir. 1999), as have many district courts in this Circuit, *see, e.g.*, *Frobe v. Vill. of Lindenhurst*, No. 11 C 1722, 2014 WL 902878, at *4 (N.D. Ill. Mar. 7, 2014) (citing cases).

7

cause was lacking for Kinslow's arrest. Thus, the factual disputes surrounding the events leading up to the discovery of the prescription medication bottles in Kinslow's vehicle do not automatically preclude summary judgment on his false arrest and malicious prosecution claims.

**B. False Arrest**

"An essential predicate to any § 1983 claim for unlawful arrest is the absence of probable cause." *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998). "Probable cause to make an arrest exists when a reasonable person confronted with the sum total of the facts known to the officer at the time of the arrest would conclude that the person arrested has committed, is committing, or is about to commit a crime." *Id*. (quotation marks and alteration omitted). "[A]lthough it requires something more than a hunch, probable cause does not require a finding that it was more likely than not that the arrestee was engaged in criminal activity -- the officer's belief that the arrestee was committing a crime need only be reasonable." *Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 714 (7th Cir. 2013). "Determining whether an officer had probable cause to arrest entails a purely objective inquiry; the officer's subjective state of mind and beliefs are irrelevant." *Id*.

The prescription medication bottles found in Kinslow's vehicle gave the officers probable cause to arrest him. First, labels on two of the bottles had been tampered with. In one case, information

had been scratched out with a marker; in the other, the label had been partially torn off. Significantly, in both cases, only information indicating the patient's/prescribee's identity had been obliterated. In addition, the addresses on the bottles indicated that they had been prescribed to more than one person. Given the information available to the officers at the time, this would seem to contradict Kinslow's claim that the medications belonged to Holmes. These facts, taken together with the officers' knowledge and experience regarding the use of prescription cough medication as a street drug, gave them probable cause to arrest Kinslow for violating the Controlled Substances Act.

Kinslow contends that there was no evidence that he possessed the prescription bottles or that he knew they were in the vehicle. But Illinois courts have consistently upheld convictions for possession of controlled substances based on a showing that the defendant exercised exclusive control over the premises where the drugs have been found. *See, e.g.*, *People v. Manning*, 2016 IL App (1st) 130700-U, ¶ 45 ("Proof that a defendant had control over the premises where the drugs were located ... gives rise to an inference of knowledge and possession of the drugs."); *People v. Jones*, 435 N.E.2d 823, 826 (1982) ("Because of the difficulty of proving knowledge of the presence of drugs, evidence showing that the defendant had control over the premises where the drugs were found gives rise to an inference of knowledge and possession of the

drugs."). Here, in light of the fact that Kinslow had exclusive control of the vehicle in which the prescription bottles were found, there was probable cause to believe that he knowingly possessed them.

Kinslow insists that his innocence could have been established if the officers had simply contacted Holmes. It is not clear that this is so, however, since at least one of the bottles appears to have been prescribed to someone other than Holmes. In any event, it is well settled that once probable cause has been established, officers are not required to investigate further. *See, e.g.*, *Burritt v. Ditlefsen*, 807 F.3d 239, 251 (7th Cir. 2015) ("Law enforcement is not required to discover more information to undermine probable cause once it has been established."). This is not a case where officers turned a blind eye to obvious evidence of Kinslow's innocence. Kinslow's assertion of his own innocence was not sufficient to require further investigation on the part of the officers. *See, e.g.*, *Beauchamp v. City of Noblesville, Ind.*, 320 F.3d 733, 744 (7th Cir. 2003) ("[C]riminal suspects frequently protest their innocence, and a suspect's denial of guilt generally is not enough to trigger a duty to investigate in the face of ... readily observable events.").

Next, Kinslow argues that the officers lacked probable cause to arrest him because DM is not a Schedule II controlled substance. Kinslow acknowledges that DM is among the substances listed in

Illinois' Controlled Substances Act. However, he claims that the medication at issue here is covered by exceptions in the statute for drug products containing DM "that may be dispensed pursuant to a prescription order of a practitioner," and for "drug products containing dextromethorphan that are sold ... in dosages and concentrations for use as an over-the-counter drug product." 720 ILCS 570/206(b)(1)(xviii).

Kinslow's attempt to invoke the exception for DM sold in over-the-counter form is a non-starter given that the DM found in his possession had been dispensed according to a prescription. His reliance on the exception for DM dispensed pursuant to a prescription is also unavailing. The defendants maintain that the latter exception is inapplicable here because the medication in Kinslow's possession had not been prescribed for him. Kinslow contends that the exception applies so long as the medication has been dispensed according to a prescription, regardless of whom it has been prescribed for.

The parties have not cited any authority in support of their respective readings of the statute, and I have found none. But even assuming that the defendants' understanding of the statute is incorrect, the officers still had probable cause for Kinslow's arrest. For an arrest based on a mistake of law does not violate the Fourth Amendment so long as the mistake is a reasonable one. This is made clear by the Supreme Court's decision in *Heien v. N.*

*Carolina*, 135 S. Ct. 530 (2014). There, an officer stopped a vehicle because one of its brake lights was out. *Id*. at 534. Cocaine was found during a subsequent search of the vehicle and the driver was charged with drug trafficking. The state appellate court later held that the evidence should have been suppressed because the law in question required only a single working brake light. The Supreme Court held that the officer had reasonable suspicion to make the stop because his understanding of the law, while mistaken, was reasonable. *Id*. at 540. As the Court put it, the "Fourth Amendment tolerates . . reasonable mistakes" so long as "those mistakes -- whether of fact or of law -- [are] objectively reasonable." *Id*. at 539 (emphases omitted). Here, given the statute's vagueness, together with the absence of any legislative, judicial, or regulatory pronouncements on the question, an officer could reasonably have believed that the exception for DM dispensed according to a prescription applied only to individuals for whom the medication had been prescribed.[7]

---

[7] While *Heien* involved the reasonable suspicion standard necessary to justify an investigatory stop, the rationale underlying the Court's decision applies equally to the probable cause standard. Indeed, as courts have pointed out, a number of the precedents on which *Heien* relied were based on application of the probable cause standard. *See, e.g.*, *United States v. Diaz*, 122 F. Supp. 3d 165, 175 n.6 (S.D.N.Y. 2015); *see also Cahaly v. Larosa*, 796 F.3d 399, 408 (4th Cir. 2015) (extending *Heien* to case involving probable cause).

For largely the same reason, probable cause for Kinslow's arrest is not vitiated by Duckins's mistaken notion that methorphan was equivalent to codeine. As with an arrest based on a legal mistake, an arrest based on a factual mistake does not violate the Fourth Amendment, so long as, objectively speaking, probable cause existed for the arrest. *See, e.g.*, *Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 714 (7th Cir. 2013) ("Determining whether an officer had probable cause to arrest entails a purely objective inquiry; the officer's subjective state of mind and beliefs are irrelevant."). Indeed, an arrest is reasonable under the Fourth Amendment so long as probable cause existed for any offense, even one unrelated to the one for which the arrest was actually made. *See, e.g.*, *Fox v. Hayes*, 600 F.3d 819, 837 (7th Cir. 2010) ("[A]n arrest is reasonable under the Fourth Amendment so long as there is probable cause to believe that *some* criminal offense has been or is being committed, even if it is not the crime with which the officers initially charge the suspect."). As already explained, DM is listed as a Schedule II controlled substance under the Controlled Substances Act. Thus, even though the medication did not contain codeine, the officers still had probable cause to arrest Kinslow based on his possession of the bottles.

### C. Qualified Immunity

Finally, even assuming the officers lacked probable cause for Kinslow's arrest, they are entitled to qualified immunity with

respect to his his false arrest claim. Although the "probable-cause standard inherently allows room for reasonable mistakes ... qualified immunity affords an added layer of protection by shielding officers from suit for damages if a reasonable officer could have believed [the arrest] to be lawful, in light of clearly established law and the information the [arresting] officers possessed." *Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 714 (7th Cir. 2013) (citation and quotation marks omitted). "Often termed 'arguable probable cause,' qualified immunity in this context protects officers who reasonably but mistakenly believe that probable cause exists." *Id*. at 714-15 (citation omitted). "The qualified immunity inquiry involves two questions: (1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendant violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Hernandez v. Cook Cty. Sheriff's Office*, 634 F.3d 906, 914 (7th Cir. 2011) (quotation marks omitted). These questions can be addressed in either order. *See, e.g.*, *Novoselsky v. Brown*, 822 F.3d 342, 354 (7th Cir. 2016). "The plaintiff carries the burden of defeating the qualified immunity defense." *Rabin v. Flynn*, 725 F.3d 628, 632 (7th Cir. 2013).

Here, even assuming that Kinslow could show a violation of a constitutional right, he is unable to show that the right was clearly established at the time of his arrest. To show that the

right was clearly established, Kinslow must either identify closely analogous cases illustrating that the officers' conduct was unlawful or he must demonstrate that the violation was so obvious that reasonable officers would have known that their actions violated the Constitution. *See, e.g.*, *McGreal v. Ostrov*, 368 F.3d 657, 683 (7th Cir. 2004). Kinslow has failed to point to any closely analogous case indicating that the officers should have known that they were violating Kinslow's rights. In fact, there are closely analogous cases to the contrary. *See, e.g.*, *Rance v. Bradshaw*, No. 15-CV-81210-KAM, 2016 WL 3199002, at *7 (S.D. Fla. June 9, 2016) (probable cause to arrest based on finding of Xanax pill in a vial with no prescription label); *Maye v. Krutell*, No. 272304, 2007 WL 914294, at *2 (Mich. Ct. App. Mar. 27, 2007) (probable cause to arrest based on presence in plaintiff's vehicle of opioid pills in a bottle with the label partially removed). Nor has Kinslow provided any basis for concluding that the purported violation of his rights was so patent that it would have been obvious to any reasonable officer.

In short, based on the facts known to the officers at the time, they had probable cause -- or at the very least, arguable probable cause -- to believe that Kinslow knowingly possessed a controlled substance in violation of Illinois' Controlled Substances Act. The defendants are therefore entitled to summary judgment on Kinslow's false arrest claim.

### D. Malicious Prosecution

"In order to establish a claim of malicious prosecution under Illinois law, the plaintiff must show '(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff.'" *Johnson v. Saville*, 575 F.3d 656, 659 (7th Cir. 2009) (quoting *Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (1996)). As with claims for false arrest, probable cause is a complete defense to claims for malicious prosecution. *See, e.g.*, *Wade v. Collier*, 783 F.3d 1081, 1085 (7th Cir. 2015). Having concluded that probable cause existed for Kinslow's arrest, the defendants are entitled to summary judgment on his claim for malicious prosecution.

### III.

For the reasons above, the defendants' motion for partial summary judgment is granted and Kinslow's motion for partial summary judgment is denied.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: July 20, 2016